**Lucille LETTEER, Plaintiff in Error,**

v.

**CONSERVANCY DISTRICT NO. 30, IN TULSA, OSAGE, ROGERS AND WASHINGTON COUNTIES, in the State of Oklahoma, Defendant in Error.**

No. 39836.

Supreme Court of Oklahoma.
Oct. 8, 1963.

Spillers, Spillers & Givens, Tulsa, for plaintiff in error.

Charles Skalnik, Tulsa, for defendant in error.

BERRY, Justice.

The principal question for decision is whether the Conservancy Act of Oklahoma, 82 O.S.1951, and O.S.Supp.1959, Sec. 531 et seq., did, prior to its amendment in 1961, require that the pendency of landowners' petition for establishment of a conservancy district and the time and place of hearing to be conducted thereon be published in *three* issues a week, or by three weekly insertions of notice, in two newspapers of general circulation in each county affected by the petition. The question so raised on this appeal appears to be one of first impression.

The matter under consideration is concedely governed by the provisions of the Conservancy Act which were in effect at the time the procceding was commenced below on February 15, 1961. The notice given in

this cause consisted of only two insertions published at weekly intervals in two newspapers in each county affected by the proposed district.

Two sections of the Conservancy Act are tendered for our construction. 82 O.S. Supp.1959, Sec. 531 and 82 O.S.Supp.1955, Sec. 544. The pertinent part of Sec. 531 provides:

"Wherever the term 'publication' is used in this Act and no manner specified therefor, it shall be taken to mean three (3) insertions in a weekly paper or in one (1) issue a week for three (3) weeks in a daily newspaper of general circulation in the county or counties wherein such publication is to be made."

For convenient reference to antecedent enactments to be discussed, the pertinent part of Sec. 544 is set forth in a dismembered form, with an identifying mark placed opposite each separated portion:

(I) "Immediately after the filing of such petition, the clerk of the district court * * * shall cause notice by publication,

(II) "to be made in two newspapers of general circulation, in each county affected by the petition,

(III) "to be made of the pendency of the petition and of the time and place of the hearing thereon, and *said notice as provided herein* shall be given in each county affected by the District, and the time of hearing shall be not less than thirty (30) days *from the date of the first publication.* * * *" (emphasis ours)

Appellant, protestant below, contends that three weekly publications of notice are mandatory under the provisions of the quoted statutes. She urges us to construe these provisions together so that both are given effect according to their unmistakable tenor. According to the proponents of the conservancy district, Sec. 544 is self-contained and it alone prescribes in what manner publication process must be effected.

Under its language, proponents assert, one insertion of notice in two newspapers in each county is sufficient to satisfy the statutory requirements.

With the exceptions to be mentioned, the quoted provisions of Sec. 544, were first embodied in Sec. 6 of the original Conservancy Act of Oklahoma, S.L.1923–1924, pp. 161, 164. Part (II) of the section, not contained in the original Act, was added by an amendment passed in 1927. See S.L. 1927, p. 94. By yet another amendment in 1955 the time required by part (III) to intervene between the first publication of notice and the hearing on the petition was reduced from the original minimum of sixty days from the date of the first publication to a period of thirty days. See S.L.1955, p. 471. Except for the two modifications noted, *all words* contained in the quoted portion of Sec. 544 at the time the present proceeding was commenced *were exactly the same* as those embodied in Sec. 6 of the original Conservancy Act.

Undertaking to construe Sec. 544, we are at once confronted with the task of determining whether the phrase "said notice as provided herein," which appears in part (III), relates to the definition of publication found in Sec. 531, or has reference solely to the context of the section in which it is employed and of which it forms a part. In the original Conservancy Act, Sec. 6—the antecedent of Sec. 544—did not contain part (II) and had no provision specifying the medium or media to be used in effecting the required process by publication. It is, therefore, unmistakably clear that the expression "said notice as provided herein" did then have reference to Sec. 1—the antecedent of Sec. 531—which defined the meaning of the term "publication" and set forth the media in which it shall be given. The section last cited, similarly dismembered for convenient reference, provided in its original form:

(A) "Wherever the term 'publication' is used in this Act and no manner is specified therefor, it shall be taken to mean four insertions in

a weekly paper or in one issue a week for four weeks in a daily newspaper

(B) "in each of two newspapers of different political affiliations, (if such newspapers there be) and of general circulation in the county or counties wherein such publication is to be made.

(C) "It shall not be necessary, if publication is made in a daily newspaper, that publication shall be made on the same day of the week in each week, but not less than twenty-one (21) days (excluding the day of the first publication) shall intervene between the first publication and the last publication, and publication shall be complete on the last day of publication."

Section 1 of the original Conservancy Act remained in the same form as set forth above when part (II) was added to Sec. 544 by the 1927 amendment. See S.L.1927, p. 94. This amendment inserted into Sec. 544 prescribed that notice by publication was "to be made in two newspapers of general circulation, in each county affected by the petition." With the addition of that language, Sec. 544 nonetheless continued to be barren of any provision governing the number of issues into which publication notice was to be inserted as well as the publication period required. As we view this amendatory enactment, the only modification effected thereby was to allow publication to be made in two newspapers of "general circulation" in lieu of the previous requirement (in part (B), Sec. 1 of the original Act) which directed notice to be given "in each of two newspapers of different political affiliations, (if such newspaper there be)." The applicability of this modification was later extended to the entire Conservancy Act by the 1957 amendment to Sec. 531. See S.L.1957, p. 552. By the terms of this amendment part (B) was changed to allow publication process to be made in all instances in two newspapers of "general circulation" instead of in two newspapers of "different political affiliations." The amendment of 1959 gave Sec. 531 the provisions under consideration. See S.L.1959, pp. 374, 375.

█ Antecedent legislative enactments, which have been repealed or superseded, may be resorted to and considered in the construction of amendatory acts in pari materia. Searcy v. State, 64 Okl. 257, 167 P. 476, 478; State ex rel. Rucker v. Tapp, Okl., 380 P.2d 260, 265; and Sutherland, Statutory Construction, 3rd ed., Vol. 3, Sec. 5805, p. 81.

█ From the time of its initial enactment (as Sec. 6 of the Conservancy Act) on through the 1955 amendment, Sec. 544 has remained devoid of any provisions setting forth the number of insertions to be made in the publication of notice and the publication period required. The words, "said notice as provided herein," as embodied in the initial enactment, were unmistakably employed as referents to the definition of publication process found in Sec. 1 of the original Act. This phrase has been repeated, in an unaltered form, in all subsequent amendatory statutes. It must be accorded the same meaning as that which it had from the inception.

█ Similarly, it is to be noted that in all amendatory enactments the time of hearing has been measured from "the date of the first publication." This phrase, which was initially employed as a referent to the successive insertions of notice then required by the original antecedent of Sec. 531, must not be likewise presumed as referential to the number of publications provided in that section.

25 O.S.1961 § 2, provides:

"Whenever the meaning of a word or phrase is defined in any statute, such definition is applicable to the same word or phrase wherever it occurs, except where a contrary intention plainly appears."

██ Words employed in the original or antecedent Act will be presumed to be

·used in the same sense in the amendatory enactment. 82 C.J.S. Statutes § 384, p. 899; Sutherland, Statutory Construction, 3rd ed., Vol. 2, Sec. 5202, pp. 534, 535. The original section as amended and the unaltered sections of an Act, code or compilation of which they are a part, when relating to the same subject matter, are to be construed together. Sutherland, Statutory Construction, 3rd ed., Vol. 1, Sec. 1935, pp. 431, 433.

■ Different legislative enactments, having reference to the same subject and not inconsistent with each other, must be construed together as a harmonious whole so that effect will be given to each. Wagner v. Swan, 162 Okl. 95, 19 P.2d 555, 559.

■■ Upon careful review of the pertinent parts of the original Conservancy Act of 1923–1924, and all subsequent amendments thereto, we hold that the provisions under consideration, 82 O.S.Supp.1959 § 531, and 82 O.S.Supp.1955 § 544, both forming a part of the same Act, are to be construed together. When viewed in conjunction with each other, these enactments unmistakably require that the pendency of landowners' petition for establishment of a conservancy district be published in each county affected by the petition either in "one (1) issue a week for three (3) weeks" in two daily newspapers of general circulation or by three insertions in two weekly newspapers of like character.

■ The conclusion so reached finds a most eloquent support in the 1961 amendment to Sec. 544. See S.L.1961, p. 624. By the terms of that amendment, part (II) of Sec. 544 was removed in its entirety, thus dispensing with the requirement of giving publication notice in two newspapers of each county. Subsequent legislation may be considered as an aid in construing prior enactments upon the same subject. Grayson et al. v. Thompson, 77 Okl. 77, 186 P. 236, 237; Board of Com'rs. of Creek County et al. v. Alexander, 58 Okl. 128, 159 P. 311, 315. In our view, the 1961 amendment clearly indicates continued legislative awareness and recognition that the pro-

visions of Sec. 531 operate. to implement Sec. 544, in so far as they relate to the manner of effecting process by publication. The 1961 amendment plainly evinces an intent of the lawmaking body to strip Sec. 544 of a requirement additional to the terms imposed by Sec. 531 and to let publication service be governed wholly by the definition of notice contained in the latter statute. This amendatory enactment thus affords a cogent basis for construing the expression in part (III) of Sec. 544, "said notice as provided herein," as referential to Sec. 531 defining publication process.

■ As stated in Hicks v. Hamilton, Okl., 283 P.2d 1115, 1119, " 'Where other than personal service has been effected, the conditions on which such service is permissible must be shown to have existed. *Statutes substituting other than a personal service of process must be strictly complied with* to give the court jurisdiction; and this compliance must appear affirmatively in the return, * * *.' " (emphasis ours). See also Walters et al. v. Weaver, 204 Okl. 72, 226 P.2d 931; Davis v. Rowland, 206 Okl. 257, 242 P.2d 716; 72 C.J.S. Process § 55, pp. 1068 et seq.

■ Although we have concluded that there was want of compliance with the statutory provisions governing publication process, the present cause need not be dismissed or terminated upon its remand to the lower court. 82 O.S.1951 § 681, provides in its pertinent part:

"In any and every case where a notice is provided for in this Act, if the court finds that due notice was not given, the court shall not thereby lose jurisdiction, and the proceedings in question shall not thereby be void; but the court shall in that case order due notice to be given, and shall continue the hearing until such time as such notice shall be properly given and thereupon shall proceed as though notice had been properly given in the first instance."

The petition shall therefore be allowed to remain pending. Proponents may be authorized to reissue publication process in

conformity with the statutory provisions which were in effect at the time the present cause was commenced. The general rule is that proceedings instituted but not terminated before passage of an amendatory enactment remain unaffected thereby and will continue to be governed by the original statute. 82 C.J.S. Statutes § 432, pp. 1005, 1006.

 There is an additional matter to be determined. This concerns protestant's failure to comply with the trial court's order requiring her to post an appeal bond in the penal sum of $15,000.00. The order apparently rested on the provisions of 82 O.S.Supp. 1955 § 545. The cited statute provides in pertinent part:

"* * * Any petitioner may, within sixty (60) days after the refusal, appeal from an *order refusing to establish or establishing such district*, to the Supreme Court * * *, upon giving bond in a sum to be fixed by the Court. * *" (emphasis supplied)

Protestant asserts that the provisions requiring a bond apply only to a "petitioner" appealing from the trial court's refusal to establish a conservancy district. As we view the quoted portion of the statute, an appeal may be taken by "any petitioner" from an order either "refusing to establish or establishing" a conservancy district. In view of this language, the words "any petitioner" must be construed to include both protestants and proponents of a conservancy district. It is not to be assumed that the Legislature intended to single out one set of litigants for a treatment different from that accorded to another group of litigants in the same proceeding. See, in this connection, Parkhill Truck Company v. Reynolds, Okl., 359 P.2d 1064, 1068.

 In fixing the high penal sum of protestant's undertaking, the lower court doubtless regarded such obligation as a supersedeas bond. Inasmuch as under the provisions of 82 O.S.1951 § 613, an appeal taken from a decision in a proceeding under the Conservancy Act cannot operate to stay the enforcement of the lower court's judgment, we hold that the bond required by

Sec. 545 is in the nature of an undertaking to secure the satisfaction of costs to be taxed on final disposition. In keeping with this view, the trial court's order requiring protestant to give a bond in the penal sum of $15,000.00 was vacated by this Court. By a subsequent order protestant was directed to give a cost bond for $500.00. Protestant timely sought relief from the excessive bond fixed in the trial court and promptly complied with the order of this Court directing her to give an undertaking for costs. We, therefore, adhere to our previous ruling denying proponents' motion to dismiss. See A. A. Murphy, Inc. v. Banfield, Okl., 363 P.2d 942, 949.

There was want of compliance with the provisions governing publication process.

Judgment is vacated and cause remanded for further proceedings not inconsistent with the views herein expressed.

BLACKBIRD, C. J., and DAVISON, JOHNSON, WILLIAMS, JACKSON and IRWIN, JJ., concur.